UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAJINDRA BHAGWANT,<br>    Plaintiff, | :<br>:<br>: | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:04-cv-1415 (JCH) |
| THE KENT SCHOOL<br>CORPORATION,<br>MARIE SAVAN, R.N., and<br>JOEL A. DANISI, M.D. | :<br>:<br>:<br>: | |
|    Defendants. | : | September 25, 2006 |

**RULING RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DOC. NOS. 38 and 54] AND MOTIONS FOR EXTENSION OF TIME [DOCS. NO. 57 & 58]**

The plaintiff, Rajinda Bhagwant, a resident of New York, initiated this action against the defendants, the Kent School Corporation (hereinafter "Kent"), Joel Danisi, M.D., and Marie Savan, alleging medical malpractice and negligence. In his complaint (Doc. No. 1), Bhagwant claims that each of the defendants was negligent and committed malpractice for their failure to diagnose and treat his serious medical condition. He further alleges that Kent negligently supervised Dr. Danisi and the infirmary's nursing staff.

Because this is a civil action between citizens of different states and the amount in controversy exceeds $75, 000, the court has jurisdiction over this matter pursuant to section 1332(a) (1) of Title 28 of the United States Code. Venue in this court is proper under section 1391(a) (2) of Title 28 of the United States Code because a substantial portion of the events relevant to Bhagwant's claim occurred in District of Connecticut.

The defendants bring these Motions for Summary Judgment (Docs. No. 38 and 54) pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dr. Danisi brings his Motion for Extension of Time (Docs. No. 57 & 58) to disclose an additional expert in the

event the court denies his Motion for Summary Judgment (Doc. No. 38). For the following reasons, Danisi's Motion for Summary Judgment is DENIED, and his Motion for Extension of Time is GRANTED. Savan and Kent's Motion for Summary Judgment is DENIED.

I.     STANDARD OF REVIEW

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

**II.    FACTS[1]**

At all times relevant to this matter, Kent was a domestic corporation located in the State of Connecticut. Kent operates a boarding school facility called The Kent School (hereinafter the "School"), which is a private boarding school located in Kent, Connecticut. Kent owns and operates an infirmary in the School (hereinafter the "Infirmary") that is staffed by nurses twenty-four hours a day. Danisi is a Connecticut resident and a physician duly licensed to practice medicine by the State of Connecticut. Kent hired Danisi, an independent contractor, to provide medical treatment and oversee medical services in the Infirmary. Savan, also a Connecticut resident, is a registered nurse duly licensed to practice nursing by the State of Connecticut. Savan was also a School employee who worked in the Infirmary.

At approximately 4:10 p.m. on November 17, 2002, Bhagwant, a student at the school, arrived at the Infirmary complaining of a pain in his right groin, a bump on his right testicle, and a tender right abdomen, upper thigh, and lower thigh. Kent School Medical Record of 11/17/02, Ex. B to Savan and Kent's Local Rule 56(a)(1) Statement. This pain had begun by 12 noon of the same day. Savan recorded Bhagwant's groin pain as having "started this AM." Id. During Bhagwant's visit to the Infirmary at 4:10 p.m., Savan did not examine Bhagwant's testicle or groin. Id. A few minutes after Bhagwant's arrival at the Infirmary, Savan discharged him after dispensing two packages of ibuprofen and instructing him to return in the morning to see Danisi.

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of Bhagwant where he provide evidence to support their allegations.

Bhagwant then left the Infirmary at 4:15 p.m., only to return at approximately 4:45 p.m. with continued complaints of pain. Bhagwant remained at the Infirmary until 6:20 p.m., at which time he was sent home upon his own request.

Around 7:40 a.m. on the next day, Bhagwant returned to the Infirmary. At 11:00 a.m., Danisi examined Bhagwant and diagnosed him with epididymitis. Danisi then prescribed medication for Bhagwant and instructed him to return the next day for a follow-up visit. However, Bhagwant did not return to the Infirmary to see Danisi until November 21, 2002, at which point Danisi observed an increase in testicular swelling. Based on this swelling, Danisi recommended that Bhagwant consult a urologist. Danisi consulted with a urologist during the summer of 2003, who diagnosed him with testicular torsion[2] on July 28, 2003. By this point, the testicle had atrophied. Lincoln Medical and Mental Health Center Medical Record of 7/28/03, Ex. D to Kent and Savan's Local Rule 56(a)(1) Statement. Bhagwant underwent surgery at Lincoln Hospital to remove his right testicle on August 19, 2003.

---

[2]According to the National Institutes of Health, testicular torsion is a condition where "the testicle turns or spins on the axis of its blood supply, blocking the flow of blood into the testicle." Nat'l Instits. of Health, Testicular Torsion Repair, www.nlm.nih.gov/medlineplus/ency/article/002994.htm. It is a medical condition that usually requires surgery. Id.

## III.  DISCUSSION[3]

### A.  Danisi's Motion to Strike[4] and Motion for Extension of Time

In his Motion for Summary Judgment, filed on December 15, 2005, Danisi argues that he is not liable for Bhagwant's injuries because, by the time he observed Bhagwant, the chances of salvaging the testicle were too low to allow recovery under Connecticut law.  Bhagwant, in his Opposition to Summary Judgment filed on January 5, 2006, does not dispute this point.  Instead, Bhagwant attached an affidavit to his Opposition from Dr. Stephen Lynn, a physician duly licensed to practice medicine in the State of New York.  Dr. Lynn's affidavit, also dated January 5, 2006, essentially states that Danisi departed from accepted medical practice on August 26, 2002, the day he signed Kent's standing orders.  Lynn Aff. at ¶ 6, Ex. C to Pl. Opp (Doc. No. 40).  Danisi allegedly departed from accepted practice by failing to include guidelines either for dealing with students who present to the Infirmary with testicular or groin pain, or for considering a diagnosis of testicular torsion.  Id. at ¶ 7.  Danisi's Response (Doc. No. 48) asserts that Dr. Lynn's "standing orders" theory of liability was not included in Lynn's December 14, 2004 Expert Disclosure or the Expert Report attached to the Expert Disclosure.  According to Danisi, Bhagwant's prior omission of this theory in the

---

[3]This court will rely on Connecticut state law for Bhagwant's substantive claims.  See Klaxon Co. v. Stentor Co, 313 U.S. 487, 496 (1941) (holding, in the conflict of laws context, that district courts sitting in diversity jurisdiction must apply the substantive law of the forum state); Dugan v. Mobile Medical Testing Services, Inc., 265 Conn. 791, 800 (2003) (outlining the factors to be taken into account when determining which state's substantive law to follow). Neither party has disputed this choice.

[4]While Danisi has not moved separately to strike under Rule 12(f) of the Federal Rules of Civil Procedure, the nature of Danisi's arguments compel the court to treat this section of Danisi's Motion to Dismiss as a Motion to Strike.

disclosure should preclude this court from considering Dr. Lynn's affidavit with respect to Danisi's Motion for Summary Judgment. While this court agrees that Bhagwant's attorneys have blatantly offended the dictates of the Federal Rules and the order of this court, in the interest of justice, the court denies Danisi's Motion to Strike.

Rule 26(a) (2) (B) of the Federal Rules of Civil Procedure governs the disclosure of expert testimony. In relevant part, it states that a party must accompany the disclosure of "a witness who is retained or specially employed to provide expert testimony in the case . . " with a written report prepared and signed by the witness." Fed. R. Civ. Pro. 26(a) (2) (B). The plain language of the Rule clearly indicates that the report must be detailed, including, among other requirements, "a complete statement of *all opinions to be expressed* and the basis and reasons therefor;" and "the data or other information considered by the witness in forming the opinions." Id. (emphasis added). Under Rule 37(c) (1),

> [a] party that without substantial justification fails to disclose information required by Rule 26(a)or 26(e) (1) or to amend a prior response to discovery as required by Rule 26(e) (2), is not, unless the failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."

Fed. R. Civ. P. 37(c) (1).

This provision of Rule 37 provides a self-executing sanction for violations of Rule 26(a). The drafters intended the section to give the disclosing party ample incentive to disclose evidence it intends to offer at trial, at a hearing, or on a motion. Fed. R. Civ. P. 37(c) (1) Advisory Committee Notes, at 184 (West 2006 Rev. Ed.).

However, even if a party does not comply with Rule 37(c) (1), automatic preclusion for undisclosed evidence is still considered "a drastic remedy and will apply

only in situations where the failure to disclose represents a flagrant bad faith and callous disregard for the rules." Montefiore Med. Ctr. v. Am. Protective Ins., 226 F.Supp.2d 470, 475 (S.D.N.Y. 2002) (citing Johnson Elec. North America, Inc. v. Mabuchi Motor America Corp., 77 F.Supp.2d 446, 458 (S.D.N.Y. 1999) (finding no bad faith where party failed to disclose a historical timeline and the case's discovery deadline was still open). Requiring a court to find no substantial explanation, harm, and bad faith before precluding evidence is meant to avoid undue harshness in the administration of the Rules. Fed. R. Civ. P. 37(c) (1) Advisory Committee Notes at 184 (listing inadvertent omission of a witness known by all parties, failure to list a witness already listed by another party, or lack of knowledge by a *pro se* litigant as inappropriate candidates for preclusion). With these principles in mind, this court now turns to the case at bar.

There is no dispute that Dr. Lynn's testimony concerning Danisi's negligent standing orders was beyond the scope of Lynn's Rule 26(a) Disclosure and Expert Report for Dr. Lynn. To be sure, Bhagwant filed Lynn's disclosure and report on December 14, 2004, while Danisi did not give his deposition until May 16, 2005. Thus, one could argue that Lynn, to the extent that he based his affidavit on Danisi's May 16, 2005 deposition, had no basis for the "standing orders" theory until after he submitted his December 14, 2004 disclosure. Bhagwant's counsel further suggested at oral argument that the defendants delayed Bhagwant's ability to present them with his "standing orders" theory by not providing Bhagwant with the Infirmary's standing orders until sometime in early 2005.

The difficulty in accepting such an argument is that at no time after early 2005

did Bhagwant ever supplement Lynn's disclosure or report, as was his duty under Rule 26(e) (1).[5]  Indeed, Dr. Lynn gave his own deposition on September 13, 2005, nearly four months after Danisi's deposition and at least three months after anything that could reasonably be considered "early 2005."  Though the "standing order" theory was mentioned during Lynn's deposition,[6] Lynn Depo. Tr. at 112, Ex. C to Pl. Opp (Doc. No. 40), this fact does not save Bhagwant's claim because "deposition testimony on a topic does not cure a failure to provide a Rule 26 disclosure."  Commercial Data Servers, Inc. v. Int'l Bus. Mach., 262 F.Supp.2d 50, 62 (S.D.N.Y. 2003).  Indeed, Bhagwant never provided Danisi with any type of notice prescribed by the Federal Rules of his new theory prior to submitting his Opposition to Danisi's Motion for Summary Judgment (Doc. No. 40) on January 5, 2006.  In addition, Bhagwant moved on November 11, 2005 to supplement the expert disclosure of Dr. Harry Fisch and to disclose an additional expert, Dr. Mark Rubenstein, which the court reluctantly granted.  Bhagwant made not attempt to amend Dr. Lynn's disclosures at that time.

Despite subsequently filing oppositions to two Motions for Summary Judgment

---

[5] Rule 26(e) (1) states as follows: "A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e) (1).

[6] Dr. Lynn references Danisi's standing order in what follows:

Q: Specifically, Doctor [Lynn], what criticisms do you have of Dr. Danisi with respect to the standing orders that were in place in 2002?

A: With respect to this particular case, that of Mr. Bhagwant, there is no mention of testicular pain, groin pain, testicular torsion or any treatment plan.

Lynn Depo. Tr. at 112, Ex. C to Pl. Opp.

that asked this court to preclude Lynn's affidavit, Bhagwant's attorneys failed to explain their clear violation of Rule 26 until September 20, 2006, when this court held oral arguments on the Motion to Strike. At the oral arguments, counsel for Bhagwant submitted that the reason for not including Lynn's "standing orders" theory in his Rule 26(a) disclosures was simple oversight by another attorney at his law firm. Ultimately, though the omission seems soaked in incompetence, the court finds nothing to suggest that it was made in flagrant bad faith. See Montefiore, 226 F.Supp.2d at 475.

While perhaps not intentional, Bhagwant's failure to comply with Rule 26(a) is certainly not harmless, especially considering that Lynn's affidavit creates a genuine issue of material fact against Danisi. Cf. Commercial Data Servers 262 F.Supp.2d at 62 (finding a failure to disclose harmless because it did not create a genuine issue of material fact). In fact, Bhagwant's Opposition, Rule 56(a) (2) statements, and oral argument statements essentially admit that Dr. Lynn's affidavit creates Bhagwant's only possible theory of liability against Danisi. As will be discussed below, without the "standing order" theory, there is no way for Bhagwant to establish that Danisi caused his injuries. By the time Danisi observed Bhagwant, there was effectively no chance of recovering Bhagwant's right testicle. By not giving Danisi any notice of his "standing orders" theory before filing his Opposition, Bhagwant's actions caused Danisi to waste resources drafting a Motion for Summary Judgment that did not address the only theory upon which Danisi could be found liable.[7]

---

[7]It is in consideration of situations like the present one that the Second Circuit maintains that "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." Hayes v. New York Dept. of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)). As

Despite the undeniable harm that the negligence of Bhagwant's attorney's has wrought on the defendants' ability to mount an effective and efficient defense, this court finds that precluding Lynn's affidavit is an inappropriate remedy under Rule 37(c) (1). This conclusion is warranted by the absence of any evidence of flagrant bad faith on the part of Bhagwant's counsel. See Montefiore, 226 F.Supp.2d at 475. More generally, a federal court should attempt within reason to allow a plaintiff's claim to be decided on the merits, rather than on a procedural ground exacerbated by attorney incompetence. The court therefore denies Danisi's Motion to Strike.

However, the court's denial of the Motion to Strike is conditioned upon the following: 1) Bhagwant must amend his Complaint to allege specifically, as a basis of his negligence claim, Danisi's liability based on the Infirmary's standing orders, in accordance with Rule 8 of the Federal Rules; 2) Bhagwant must amend his Rule 26(a) Disclosure to reflect his "standing orders" theory of liability, in accordance with and to fully comply with Rule 26(e) of the Federal Rules; and 3) Bhagwant's attorneys must pay $3, 000 to Dr. Danisi and $3, 000 to Savan and Kent (jointly) for attorneys' fees unnecessarily incurred in preparing their summary judgment motions.[8] Bhagwant and

---

the Perma court concluded, "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Perma 410 F.2d at 578. Though Hayes and Perma are not squarely on point, this court finds that creating an issue of material fact by submitting an affidavit that contradicts prior deposition testimony a powerful analogy to Bhagwant's manufacturing of a material issue of fact via an affidavit shoring up unsupplemented omissions in Lynn's disclosures.

[8]The court notes that $3, 000 is certainly far below the actual amounts spent by the defendants in preparing their motions for summary judgment. Instead, the court fixes this amount to avoid the difficulties of determining both the actual amounts spent by the parties and the portion of that amount attributable to the Rule 26 violations of Bhagwant's attorneys. This is meant as a sanction which is only partially compensatory.

his attorneys must comply with all three of these conditions by October 16, 2006. If Bhagwant and his attorneys fail to fulfill these prerequisites, the court grants Danisi permission to renew his Motion for Summary Judgment by October 18, 2006 with a one sentence declaration of noncompliance.

Because this court denies Danisi's Motion to Strike, Danisi's Motions for Extension of Time (Docs. No. 57 and 58) to disclose an expert to respond to Bhagwant's new theory of liability are GRANTED. However, this grant is also conditioned upon Bhagwant and his attorneys satisfying the three conditions outlined by the court above. The court grants Danisi until November 1, 2006 to conduct discovery on the "standing orders" theory of liability and December 1, 2006 to disclose an expert. Should Bhagwant not comply, Danisi can simply renew his Motion for Summary Judgment. The court will not grant Bhagwant the right to depose Danisi's new expert. The court fully expects to set his matter for a trial in January or February 2007.

### B. "Lost Chance" Liability

The heart of Bhagwant's complaint is that the defendants, through their negligence and medical malpractice, failed to identify and treat his preexisting testicular torsion. Thus, unlike traditional cases dealing with medical malpractice, Bhagwant does not claim that the defendants caused his condition. Rather, Bhagwant's claim is that the defendants deprived him of the opportunity to avoid the injuries resulting from his condition.

Under Connecticut law, this type of claim is considered a "lost chance" or "lost opportunity" theory. See Drew v. William W. Backus Hosp., 77 Conn.App. 645, 652-53 (Conn.App.Ct. 2003). Prevailing under a lost chance theory of recovery requires that

11

the Bhagwant prove: "1) that [he had] in fact been deprived of a chance for successful treatment and 2) that the decreased chance for successful treatment *more likely than not* resulted from the defendant's negligence."  Boone v. William W. Backus Hosp., 272 Conn. 551, 574 (2005) (quoting Drew, 77 Conn.App. at 654).  In this two-step process, Bhagwant must first demonstrate that "*prior to* the defendant[s'] alleged negligence [Bhagwant's testicle] had a chance of survival of at least 51 percent."  Id. (citation omitted).  If he can pass this threshold, Bhagwant must then establish that he "had a decreased chance for successful treatment and that this decreased chance more likely than not resulted from the defendant's negligence."  Id.; see also Borkowski v. Sacheti, 43 Conn.App. 294, 308 (Conn.App.Ct. 1996) (citing Cooper v. Sisters of Charity of Cincinnati, Inc., 27 Ohio St. 2d 242, 253-54 (1971), for the proposition that a lost cause plaintiff cannot submit a case to the jury without evidence that, with proper medical care, the patient probably would have survived).  Because the defendants present two distinct challenges to Bhagwant's attempt to establish a lost chance theory of recovery, this court will address their arguments in turn.

        1.      <u>Savan and Kent's liability under a lost chance theory of recovery.</u>

Savan and Kent jointly filed a Motion for Summary Judgment.  They essentially claim that, if Savan breached the standard of care for nurses with respect to Bhagwant, such breach could not have occurred until 6:20 p.m.  According to Savan, Bhagwant refused to allow Savan to examine his groin when he initially arrived at 4:10 p.m.  Savan Depo., June 28, 2005 at 77: 9-10.  The defendants then point to Dr. Palmer's deposition, in which he stated that the standard of care for a nurse did not require Savan to examine Bhagwant over his objection.  Hence, the defendants argue that the

12

next opportunity for a diagnosis of Bhagwant's condition did not come until 6:20 p.m., just before Bhagwant returned home. Since Bhagwant could not have received surgery for at least another hour and forty minutes, over eight hours would have elapsed from the onset of his pain. Palmer Depo. at 122:24 - 123:4. Once eight hours have elapsed from the onset of pain, the likelihood of saving the testicle is only twenty-five to thirty percent. Palmer Depo. at 123:15-23. The defendants urge that this fact precludes Bhagwant from showing that the recovery of his testicle was more likely than not before Savan's alleged breach.

This court finds that there are several genuine issues of material fact. For one, Palmer's testimony does not clearly provide a factual basis for the defendants' assertion that Savan breached the duty of care when Bhagwant left the Infirmary at 6:20 p.m., rather than when Bhagwant arrived for a second time at 4:45 p.m. Indeed, at one point in his deposition, Palmer testified that, "anywhere *up until* 6 o'clock I think the patient should have been referred to an emergency room at least by the end of her interaction with the plaintiff that day." Palmer Depo. at 122: 11-14 (emphasis added). Palmer is then challenged about the fact that, earlier in his deposition, he stated that Savan should have referred Bhagwant to the emergency room *at* 6:20, rather than *up until* 6:20. Id. at 19-22. To this, Palmer replies, "I will stand by that." Id. at 23. To this court, this passage is ambiguous as to whether Palmer was changing his testimony to reflect his earlier comments, or merely acknowledging that he had made the comments attributed to him. The defendants have put forth no evidence to clarify this discrepancy. A jury could reasonably infer from Palmer's testimony that Savan breached the standard of care at any point from 4:45 p.m. up until 6:20 p.m.

More important than Palmer's testimony, however, is the fact that it is not at all clear from the record that Bhagwant actually refused to allow Savan to examine his groin. As the defendants' own papers point out, when Bhagwant was asked whether he prevented Savan from examining his groin, he said, "I don't know. I don't think so." Bhagwant Depo., Jan. 6, 2005 at 182:8-10. Though not the most assertive statement, this hardly qualifies as an admission that he did refuse examination. In addition, Bhagwant has offered the opinion of Nadine Schwab, a registered nurse in the state of Connecticut who specializes in school health. Schwab stated that Savan breached the standard of care by not examining Bhagwant when he first came in at 4:10 p.m., and when he returned at 4:45 p.m. Schwab Depo., August 4, 2005 at 71:11 - 72:4.

Bhagwant also offers the testimony of Dr. Lynn during the exchange which follows:

> Q: My question is, what is the earliest point in time you believe diagnosis could have been made which could have led to treatment which could have fully salvaged the testicle?
>
> A: 4:11 p.m. on Sunday the 17th. Moment of arrival in the healthcare center.

Lynn Depo. at 100: 4-11, Ex. C to Local Rule 56(a)(2) Statement. The defendants press that, in this exchange, Lynn was only testifying as to when a diagnosis of testicular torsion could have been made, not the probability of a successful surgery. Taking this evidence in the light most favorable to Bhagwant, however, Lynn's testimony indicates that he should have been diagnosed with testicular torsion at 4:11 p.m. Considering Dr. Palmer's estimate that Bhagwant could have received surgery within one hour and forty minutes after diagnosis, Bhagwant's operation would have been around 6:51 p.m. Surgery at this hour would have led to treatment within six to

14

eight hours after the onset of pain.  If given treatment within this time period, Lynn establishes that Bhagwant "could have" fully salvaged his testicle.   Though it is certainly true that Lynn does not specifically state Bhagwant's odds of fully recovering his testicle with a 4:11 p.m. diagnosis, it is reasonable to infer from Lynn's testimony that Bhagwant's recovery would have at least been probable.  Further, Lynn states unequivocally in his affidavit that, had Infirmary staff diagnosed Bhagwant at 4:11 p.m., the "salvageability of the testicle could have been 100%, and certainly would have been greater than 50%."  Lynn Aff. at ¶ 10.

Based on the discussion above, a reasonable jury could find that Savan breached the duty of care when Bhagwant first came into the infirmary, that Bhagwant's chances of recovery when he first came into the infirmary were above fifty percent, and that Savan's breach more than likely caused Bhagwant's lost chance of recovery.  This is all Bhagwant needs to prevail under Connecticut's law of lost chance of recovery.  Therefore, Savan and Kent's Motion for Summary Judgment is denied.

      2.  <u>Danisi's liability under a lost chance theory of recovery.</u>

Because this court denied Danisi's Motion to Strike the affidavit testimony of Dr. Lynn, Bhagwant has created a genuine issue of material fact against Danisi with respect to whether Danisi departed from accepted medical practice in not preparing standing orders for testicular torsion.  <u>See</u> Lynn Aff. at ¶ 5.  At oral argument, Danisi contended that, even if this court admitted Lynn's affidavit, Bhagwant could not create a genuine issue of fact regarding Danisi's liability.  This contention is premised on the number of contingencies that a finder of fact would have to assume in order to conclude that Danisi's standing orders prevented Bhagwant from being diagnosed with testicular

torsion at 4:11 p.m. and receiving surgery within the critical six to eight hour window. Though the court agrees that Bhagwant may have a difficult time establishing his claims against Danisi even with Dr. Lynn's testimony, it cannot conclude, based on the record before it, that there is no set of facts upon which Bhagwant could establish his claim against Danisi. This is especially true considering the inherently conditional nature of analysis necessary under a theory of lost chance recovery. See generally Boone, 272 Conn. at 574. As a result, this court denies Danisi's Motion for Summary Judgment.

### IV.     CONCLUSION

For the foregoing reasons, Danisi's Motion to Strike and Motion for Summary Judgment [both contained in Doc. No. 38] are DENIED, contingent on the conditions set forth in Part III, Section A of this Ruling. Ruling at 10-11. Danisi's Motions for Extension of Time [Doc. Nos. 57 &58] are GRANTED, also contingent upon the conditions set forth in Part III, Section A of this Ruling. Id. Kent and Savan's Motion for Summary Judgment [Doc. No. 54] is DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of September, 2006.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge